UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INDUSTRIAL MODELS, INC. | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | Judge |
| SNF, INC., BRANDFX HOLDINGS, LLC, | ) | |
| and BRANDFX, LLC d/b/a/ BrandFX, | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| . | ) | |

## COMPLAINT

NOW COMES Plaintiff, Industrial Models, Inc. ("Industrial Models"), and complains of Defendants, SNF, Inc., BrandFX Holdings, LLC and BrandFX, LLC (collectively "the BrandFX Business Entities"), as follows:

### Parties

1. Plaintiff, Industrial Models, is an Illinois corporation in good standing having a principal place of business at 400 W. Bonner Road, Wauconda, Illinois.

2. Upon information and belief, Defendant SNF, Inc. is a Texas corporation having a principal place of business at 2800 Golden Triangle Blvd., Fort Worth, Texas.

3. Upon information and belief, Defendant BrandFX Holdings, LLC is a Delaware limited liability company owned in part by SNF, Inc. and likewise having a principal place of business at 2800 Golden Triangle Blvd., Fort Worth, Texas.

4. Upon information and belief, Defendant BrandFX, LLC is a Delaware limited liability company wholly owned by BrandFX Holdings, LLC and likewise having a principal place of business at 2800 Golden Triangle Blvd., Fort Worth, Texas.

### Jurisdiction and Venue

5.  This action arises under Sections 1 and 2 of the Sherman Act (15 U.S.C. §2), Section 4 of the Clayton Act (15 U.S.C. §15), the Declaratory Judgment Act (28 U.S.C. §§2201 *et seq.*), the Lanham Act (15 U.S.C. §§1051 *et seq.*), the Patent Act (35 U.S.C. §§1 *et seq.*), the Copyright Act (17 U.S.C. §§101 *et seq.*) and under common law.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1338(a), 2201 and 2202, 15 U.S.C. §1121 and the Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

6.  Jurisdiction is also proper in this judicial district pursuant to 28 U.S.C. §1332(a), given the diversity of state citizenships between Plaintiff and each of the BrandFX Business Entities, and given that the matter in controversy exceeds the value of $75,000 exclusive of interest and costs.

7.  Venue and jurisdiction are proper in this judicial district pursuant to 15 U.S.C. §22 because, upon information and belief, each of the BrandFX Business Entities is found in this district, is an inhabitant of this district, and transacts business in this district.

8.  Venue is also proper in this judicial district pursuant to 28 U.S.C. §§1391(b), (c) and (d), because a substantial part of the events and omissions giving rise to the claims occurred in this district; because, upon information and belief, each of the BrandFX Business Entities transacts business in this district; and because, upon information and belief, each of the BrandFX Business Entities has continuous and systematic business contacts with this district such that each of the BrandFX Business Entities is subject to general jurisdiction and specific jurisdiction here.

## Background

9.  Industrial Models is a closely-held and family-owned Illinois corporation that for many years has manufactured machined components in a wide variety of materials for use in a wide variety of industries, and in related engineering services.

10.  No later than January 2012, Industrial Models made a decision to further diversify its business by entering the United States market for fiberglass utility bodies for trucks (hereinafter "FUBs")

11.  Starting no later than January 2012, Industrial Models took costly, specific and extensive steps to prepare to enter the United States market for FUBs and, in so doing, spent a substantial amount of money and invested other valuable resources on development of an Industrial Models product line of FUBs and preparations to manufacture and sell such products in the United States.

12.  In early February 2012, as part of such costly, specific and extensive steps, Industrial Models purchased a set of unique and valuable molds (hereinafter "the Subject Molds"), of a kind necessary for manufacturing FUBs, from a Wisconsin entity (hereinafter "Badger Truck") that earlier had been using the Subject Molds to manufacture FUBs but which at that time had elected to stop such manufacturing activities.

13.  Additional costs incurred and investments made by Industrial Models starting in 2012 in furtherance of its entry into the United States market for FUBs included without limitation the following examples:

- costs of purchasing additional valuable manufacturing equipment necessary for an FUBs production line;

-3-

- costs of purchasing substantial amounts of valuable raw materials necessary for the manufacture of FUBs;

- costs incurred in refurbishing the Subject Molds;

- costs incurred in reconfiguring, re-purposing and using substantial amounts of Industrial Models' existing workspace and workforce capacity as necessary for development, manufacture and sales of FUBs;

- costs incurred in searching for, hiring and employing additional personnel necessary for running Industrial Models' FUBs production line;

- costs incurred in manufacturing prototype FUBs;

- additional costs incurred in entering the FUBs market, *e.g.*, establishing and developing relationships with prospective purchasers of Industrial Models FUBs; and

- substantial opportunity costs incurred by Industrial Models resulting from its decision to spend and invest capital on entering the FUBs market rather than on alternative valuable business activities on which Industrial Models otherwise could and would have spent and invested such capital.

14. The BrandFX Business Entities are involved in a common enterprise in the United States market for FUBs.

15. For years and continuously until on or about August 30, 2013, Defendant SNF, Inc. identified itself and did business as "BrandFX," sometimes also using the longer business name "BrandFX Body Company" and sometimes using the acronym "BFX" in connection with its "BrandFX" business. ("Brand FX" also has sometimes been used in place of "BrandFX.")

16. Upon information and belief, on or about August 30, 2013, Defendant SNF, Inc. entered into business arrangements with non-party investment firm Stonebridge Partners in connection with the BrandFX business, resulting in creation of Defendant BrandFX Holdings, LLC and recapitalization of the BrandFX business.

17. Upon information and belief, the BrandFX Business Entities have, since on our about August 30, 2013, been led by a common management, including by Lee Finley, the founder and largest share-holding owner of the BrandFX business.

18. Upon information and belief, Defendant SNF, Inc. retains valuable assets and business, including BrandFX assets and business, notwithstanding the 2013 recapitalization, and the BrandFX Business Entities have worked together in their common BrandFX enterprise since on or about August 30, 2013.

### Anti-Competitive Conduct

19. Starting in early February 2013, Industrial Models received communications from Defendant SNF, Inc., stating Defendant SNF, Inc.'s awareness that Industrial Models had entered the FUBs market and expressing interest in purchasing the Subject Molds from Industrial Models.

20. On or about February 18, 2013, in response to such early-February 2013 communications from Defendant SNF, Inc, Industrial Models informed Defendant SNF, Inc. that Industrial Models had already incurred very substantial costs and made very substantial investments on entering the FUBs market with the specific intention of selling FUBs made using the Subject Molds. At such time, Industrial Models informed Defendant SNF, Inc. that such total costs to date were at or about $200,000.

21. On or about February 19, 2013, Lee Finley of Defendant SNF, Inc. sent a written communication to Industrial Models, alleging that the Subject Molds "infringe on our trade dress, our copyrights and our patents," demanding that Industrial Models get the Subject Molds "off the market" and stating that he had instructed attorneys to file a lawsuit against Industrial Models and "to seek an injunction against the sale of the molds until the lawsuit is settled."

22. Such February 19, 2013 written communication from Defendant SNF, Inc. did not identify any trade dress, patent or copyright in connection with its infringement allegations against Industrial Models, nor had Defendant SNF, Inc. at any earlier point identified any trade dress, copyright or patent in connection with such infringement allegations.

23. To this day, neither Defendant SNF, Inc. nor any other of the BrandFX Business Entities has identified any cognizable trade dress right, actual or alleged, that could form the basis of any reasonable, good faith claim of trade dress infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith; this is despite Industrial Models' repeated requests to the BrandFX Business Entities that they provide any such information to Industrial Models.

24. Upon information and belief, there was no trade dress right, and continues to be no trade dress right, that could form the basis of any reasonable, good faith claim by any of the BrandFX Business Entities of trade dress infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

25. Despite the foregoing, starting no later than February 19, 2013, Defendant SNF, Inc. repeatedly and in some instances publicly accused Industrial Models of infringing purported BrandFX trade dress rights in connection with Industrial Models' use of the Subject Molds.

26. Upon information and belief, at the time of each instance that Defendant SNF, Inc. accused Industrial Models of infringing BrandFX trade dress rights, including without limitation when such accusations were stated publicly, and at the time of each instance that Defendant SNF, Inc. made a related cease-and-desist demand of Industrial Models, Defendant SNF, Inc. knew that it owned no trade dress right that could form the basis of any reasonable, good faith claim of trade dress infringement against Industrial Models in connection with use of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

27. Defendant SNF, Inc.'s publicly-stated accusations that Industrial Models' use of the Subject Molds infringed BrandFX trade dress rights included a Texas lawsuit that Defendant SNF, Inc. filed against Industrial Models in March 2013 and which Defendant SNF, Inc. continued to prosecute against Industrial Models until Defendant SNF, Inc. filed a notice of non-suit in August 2014 for dismissal without prejudice.

28. Defendant SNF, Inc. filed such Texas lawsuit against Industrial Models despite knowing that Defendant SNF, Inc. owned no trade dress right that could form the basis of any reasonable, good faith claim by Defendant SNF, Inc. of trade dress infringement against Industrial Models in connection with use of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

29. By such bad-faith Texas lawsuit, Defendant SNF, Inc. sought an order enjoining Industrial Models "from offering to sale, selling, using, or otherwise disposing of" the Subject Molds.

30. Industrial Models incurred substantial costs in defending itself against such bad-faith Texas lawsuit, including before a Tarrant County, Texas district court that entered an April 29, 2013 default judgment and permanent injunction ordering Industrial Models to refrain "from offering to sale, selling, using, or otherwise disposing of" the Subject Molds, and before a Texas court of appeals that issued a July 24, 2014 memorandum opinion concluding that "the face of the record shows the absence of proper service [of process on Industrial Models]" and vacating the April 29, 2013 default judgment and permanent injunction.

31. Defendant SNF, Inc.'s complaint ("Original Petition") in such Texas lawsuit did not identify any cognizable alleged trade dress right that could form the basis of any reasonable, good faith claim by Defendant SNF, Inc. of trade dress infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

32. At no time has any of the BrandFX Business Entities brought to Industrial Models' attention the specific content of any cognizable trade dress right that could form the basis of any reasonable, good faith claim by any of the BrandFX Business Entities that Industrial Models infringed, or threatened to infringe, such right.

33. During the pendency of Defendant SNF, Inc.'s bad-faith Texas lawsuit against Industrial Models, Defendant SNF, Inc. communicated to Industrial Models multiple *contradictory* allegations as to content of the purported "trade dress" which was the subject of

Defendant SNF, Inc.'s infringement accusations against Industrial Models; no such allegation communicated by Defendant SNF, Inc. at any time included a description of anything that could reasonably be considered a cognizable trade dress right.

34. During the pendency of such bad-faith Texas lawsuit, specifically during a July 16, 2013 teleconference between counsel for Defendant SNF, Inc. and counsel for Industrial Models, counsel for Industrial Models repeated Industrial Models' earlier-stated demand that Defendant SNF, Inc. identify the purported "trade dress" which was the subject of Defendant SNF, Inc.'s infringement accusations against Industrial Models. Counsel for Defendant SNF, Inc. responded by making a statement too ambiguous to identify any cognizable trade dress right: counsel for Defendant SNF, Inc. stated that the purported "trade dress" was "the French curve in all of our designs." Industrial Models' counsel then asked BrandFX's counsel to elaborate, to which BrandFX's counsel stated, "I'm going to rely on the complaint" and "I don't need your bullshit."

35. At a later time during the pendency of such bad-faith Texas lawsuit, in an appellee brief filed on or about November 15, 2013, Defendant SNF, Inc. asserted that the purported "trade dress" which was the subject of Defendant SNF, Inc.'s infringement accusations against Industrial Models was the "'total image' of BrandFX's business."

36. Defendant SNF, Inc.'s accusation that Industrial Models' use of the Subject Molds infringed a trade dress right constituting the "'total image' of BrandFX's business" was entirely without basis, and, upon information and belief, Defendant SNF, Inc. made such accusation in bad faith.

37. In such November 15, 2013 appellee brief, Defendant SNF, Inc. set forth what it described as "a thorough description of ... [the purported BrandFX] trade dress." The following

indented text is a direct and complete quotation of such "thorough description" (absent citations

here omitted):

I.   *Size of the business:* "Brand FX is the largest manufacturer of
fiberglass truck bodies in the United States."

ii.  *Types of product comprising the business:* "Fiberglass composite
utility or truck bodies," including "service bodies," "line bodies,"
"toppers," and "inserts."

iii. *Raw material used in the business' products:* "Fiberglass."

iv.  *Role of the business:* Brand FX acts as designer, manufacturer, and
seller.

v.   *Purpose of the business:* To place on the market a truck product
that "allow[s] end-users to efficiently store and compartmentalize
the various tools and equipment that they regularly use."

38. Such "thorough description" by Defendant SNF, Inc. of the purported BrandFX

"trade dress" which Defendant SNF, Inc. accused Industrial Models of infringing neither

comprises nor includes a description of anything that could reasonably be considered a

cognizable trade dress right.

39. Such "thorough description" by Defendant SNF, Inc. of the purported BrandFX

"trade dress" which BrandFX accused Industrial Models of infringing neither comprises nor

includes a description of any trade dress characterized by a "French curve."

40. Such "thorough description" by Defendant SNF, Inc. of the purported BrandFX

"trade dress" which Defendant SNF, Inc. accused Industrial Models of infringing contradicted

Defendant SNF, Inc.'s earlier non-specific allegation, also made by Defendant SNF, Inc. during

the pendency of the bad-faith Texas lawsuit, that the purported "trade dress" was "the French

curve in all of our designs."

41.  By asserting in Texas court the purported BrandFX "trade dress" that was the subject of such "thorough description" by Defendant SNF, Inc., Defendant SNF, Inc. publicly asserted an exclusive right to be the largest manufacturer of fiberglass truck bodies in the United States engaged in activities to which neither Defendant SNF, Inc. nor any of the BrandFX Business Entities had any right to exclude any competitor.

42.  By asserting in Texas court the purported BrandFX "trade dress" that was the subject of such "thorough description" by Defendant SNF, Inc., Defendant SNF, Inc. publicly asserted a right to exclude Industrial Models from becoming the largest manufacturer of fiberglass truck bodies in the United States engaged in activities to which neither Defendant SNF, Inc. nor any of the BrandFX Business Entities had any right to exclude any competitor.

43.  During the pendency of such bad-faith Texas lawsuit, Defendant SNF, Inc. attempted to pressure Industrial Models to enter into a "non compete" agreement with Defendant SNF, Inc.; despite such pressure, Industrial Models did not enter into any such agreement.

44.  To this day, neither Defendant SNF, Inc. nor any other of the BrandFX Business Entities has identified any patent that could form the basis of any reasonable, good faith claim by BrandFX of patent infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith; this is despite Industrial Models' repeated requests to the BrandFX Business Entities that they provide any such information to Industrial Models.

45.  Upon information and belief, there was no patent, and continues to be no patent, that could form the basis of any reasonable, good faith claim by any of the BrandFX Business Entities

of patent infringement with respect to the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

46. Despite the foregoing, starting no later than February 19, 2013, Defendant SNF, Inc. repeatedly accused Industrial Models of infringing purported BrandFX patent rights in connection with the Subject Molds.

47. During a July 16, 2013 teleconference between counsel for Defendant SNF, Inc. and counsel for Industrial Models, counsel for Industrial Models repeated Industrial Models' earlier-stated demand that Defendant SNF, Inc. identify the purported "patents" that were the subject of Defendant SNF, Inc.'s infringement accusation and cease-and-desist demand against Industrial Models. Counsel for Defendant SNF, Inc. responded by refusing to identify any patent.

48. Upon information and belief, at the time of each instance that Defendant SNF, Inc. accused Industrial Models of infringing BrandFX patent rights and at the time of each instance that Defendant SNF, Inc. made a related cease-and-desist demand of Industrial Models, Defendant SNF, Inc. knew that it owned no patent that could form the basis of any reasonable, good faith claim of patent infringement in connection with the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

49. To this day, neither Defendant SNF, Inc. nor any other of the BrandFX Business Entities has identified any copyright, actual or alleged, that could form the basis of any reasonable, good faith claim of copyright infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith; this is despite Industrial Models' repeated requests to the BrandFX Business Entities that they provide any such information to Industrial Models.

50. Upon information and belief, there was no copyright, and continues to be no copyright, that could form the basis of any reasonable, good faith claim by any of the BrandFX Business Entities of copyright infringement with respect to any use by Industrial Models of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

51. Despite the foregoing, starting no later than February 19, 2013, Defendant SNF, Inc. repeatedly accused Industrial Models of infringing purported BrandFX copyrights in connection with Industrial Models' use of the Subject Molds.

52. Upon information and belief, at the time of each instance that Defendant SNF, Inc. accused Industrial Models of infringing any BrandFX copyright and at the time of each instance that Defendant SNF, Inc. made a related cease-and-desist demand of Industrial Models, Defendant SNF, Inc. knew that it owned no copyright that could form the basis of any reasonable, good faith claim of copyright infringement against Industrial Models in connection with use of the Subject Molds, any product made therewith, or any product that could reasonably be expected to be made therewith.

53. Industrial Models' repeated requests that the BrandFX Business Entities identify any cognizable trade dress right, patent or copyright allegedly infringed, or in any way at risk of being infringed, by Industrial Models have never yielded a response providing any such information from any of the BrandFX Business Entities. This includes requests of such kind made by Industrial Models to Defendant SNF, Inc. prior to August 30, 2013 and further includes requests of such kind made by Industrial Models after August 30, 2013 to the BrandFX Business Entities, including for example most recently on May 22, 2015 and June 3, 2015.

54. Industrial Models' May 22, 2015 request to the BrandFX Business Entities was sent to Defendant SNF, Inc.'s counsel in Chicago, Illinois. Such request urged "BrandFX Body Company" to acknowledge the non-existence of any trade dress, patent or copyright infringed or potentially infringed by Industrial Models, or, in the absence of such acknowledgment, to identify any relevant patents and copyrights. Industrial Models received only a short June 2, 2015 response which did not address the substance of Industrial Model's request and, instead, directed Industrial Models to contact BrandFX attorneys in Texas.

55. On June 3, 2015, Industrial Models sent its May 22, 2015 request to BrandFX attorneys in Texas and requested a response by no later than June 5, 2015. In doing so, Industrial Models pointed out that there had been no substantive response to the May 22, 2015 request. To date, Industrial Models still has received no response to its June 3, 2015 communication, even though, upon information and belief, it was received by the Brand FX attorneys on June 3, 2015.

56. Given Defendant SNF, Inc.'s stated contentions that the Subject Molds infringe BrandFX trade dress rights, patents and copyrights and that Industrial Models therefore has a legal obligation to avoid using the Subject Molds, and further given Defendant SNF, Inc.'s specific efforts to obtain an injunction against Industrial Models offering, selling, using or disposing of the Subject Molds, and further given the entry of such an injunction by a Texas court until the vacation of such injunction in July 2014 on procedural grounds, and further given the BrandFX Business Entities' non-withdrawal of the infringement allegations despite Industrial Models' repeated requests, Industrial Models has since early 2013 reasonably, prudently and costly refrained from using the Subject Molds, in an effort to avoid any foreseeable costs of dispute with the BrandFX Business Entities, including without limitation costs of threatened and actual bad-faith litigation.

-14-

57.  At no time has any of the BrandFX Business Entities indicated any retraction, correction or modification of any part of the contentions stated by Defendant SNF, Inc. – which each of the BrandFX Business Entities continuously has known to be false – that the Subject Molds infringe BrandFX trade dress rights, patents and copyrights.

58.  At no time has any of the BrandFX Business Entities indicated any retraction, correction or modification of any part of Defendant SNF, Inc.'s stated demand – which each of the BrandFX Business Entities continuously has known to be false – that Industrial Models cease and desist use of the Subject Molds.

59.  Upon information and belief, Defendant SNF, Inc. has told at least one other entity active in the United States market for FUBs that Defendant SNF, Inc. owns trade dress rights, patents and copyrights covering the Subject Molds such that Defendant SNF, Inc. has exclusive rights thereto, despite knowing that no such trade dress right, patent or copyright exists.

60.  Upon information and belief, Defendant SNF, Inc. told Badger Truck that Defendant SNF, Inc. owned trade dress rights, patents and copyrights covering the Subject Molds such that Defendant SNF, Inc. had exclusive rights thereto, despite knowing that Defendant SNF, Inc. did not own any such trade dress right, patent or copyright.

61.  Upon information and belief, such communication by Defendant SNF, Inc. to Badger Truck occurred at times both before and after Badger Truck sold the Subject Molds to Industrial Models, including at a time that Defendant SNF, Inc. knew that Badger Truck or an entity closely related thereto was a prospective purchaser of FUBs that Industrial Models was preparing to manufacture using the Subject Molds and knew that Defendant SNF, Inc. did not own any such trade dress right, patent or copyright.

-15-

62. At the time such communication occurred, Industrial Models had a business relationship with Badger Truck.

63. At the time such communication occurred, upon information and belief, Badger Truck was a prospective purchaser of FUBs that Industrial Models was preparing to manufacture using the Subject Molds, and both Industrial Models and Defendant SNF, Inc. knew of such prospective business relationship.

64. In falsely telling Industrial Models and one or more entities other than Industrial Models, including at least Badger Truck, that the Subject Molds infringed non-existent BrandFX intellectual property rights, Defendant SNF, Inc. acted with intent to cause disuse of the Subject Molds by Industrial Models and thus non-manufacture and non-sale by Industrial Models of FUBs.

65. Defendant SNF, Inc.'s conduct in falsely telling Industrial Models and one or more entities other than Industrial Models, including at least Badger Truck, that the Subject Molds infringed non-existent BrandFX intellectual property rights had the foreseeable effect of causing disuse of the Subject Molds by Industrial Models, including without limitation non-manufacture by Industrial Models of FUBs manufacturable with the Subject Molds, and thus precluding any sale of such FUBs by Industrial Models to such entity or entities.

66. Upon information and belief, in engaging in the conduct described in the foregoing paragraphs, including without limitation Defendant SNF, Inc.'s filing and prosecution of its Texas lawsuit against Industrial Models, which was objectively meritless and pursued with subjective bad faith, the BrandFX Business Entities sought to benefit from the assertion of trade dress rights but did not have any actual purpose or specific intent to enforce any actual or believed trade dress right.

-16-

67. Upon information and belief, in engaging in the conduct described in the foregoing paragraphs, the BrandFX Business Entities sought to benefit from the assertion of patent rights but did not have any actual purpose or specific intent to enforce any actual or believed patent.

68. Upon information and belief, in engaging in the conduct described in the foregoing paragraphs, the BrandFX Business Entities sought to benefit from the assertion of copyrights but did not have any actual purpose or specific intent to enforce any actual or believed copyright.

69. Notwithstanding the foregoing and Industrial Models' substantial costs and losses incurred to date as a direct result of the BrandFX Business Entities' anti-competitive conduct, Industrial Models retains manufacturing capacity and remains intent on competing successfully in the interstate United States market for FUBs, including against the BrandFX Business Entities and including by using the Subject Molds to manufacture FUBs for sale in the United States.

70. The BrandFX Business Entities, by their conduct including without limitation specific and unretracted threats of litigation against Industrial Models, the bad-faith Texas lawsuit against Industrial Models for purported trade dress infringement and unfair competition, the obtaining of an injunction against Industrial Models (later vacated on appeal) through such lawsuit, the recent non-suiting *without prejudice* of such lawsuit and subsequent non-response to Industrial Models' requests to acknowledge non-existence of any relevant BrandFX intellectual property right – all in connection with the Subject Molds – has substantially and unlawfully impeded, hindered and obstructed interstate competition in the United States market for FUBs, including by causing Industrial Models reasonably to avoid using the Subject Molds and related valuable assets until these matters are resolved.

71. Industrial Models remains under real and immediate threat of litigation by the BrandFX Business Entities for purported trade dress infringement, purported patent infringement

and/or purported copyright infringement in connection with Industrial Models' possession and commercial use of the Subject Molds, and Industrial Models has a reasonable apprehension that the BrandFX Business Entities may initiate such litigation.

72.  Upon information and belief, the BrandFX Business Entities have and are maintaining monopoly power in the United States market for FUBs, with a market share in excess of 80 percent.  Industrial Models' bases for such reasonable belief include substantial relevant market data and information, for example:

- an April 8, 2010 Memorandum Opinion of the Court of Appeals for the Second District of Texas, stating that Defendant SNF, Inc. and Astoria Industries of Iowa, Inc. ("Astoria") "comprise approximately ninety percent of the fiberglass utility body and work topper market";

- a January 12, 2011 brief filed in a Texas court by BrandFX, describing Defendant SNF, Inc. and Astoria as "primary competitors in the fiberglass body market" and as "compet[ing] primarily against each other in the fiberglass body industry";

- a January 2012 market survey stating that Defendant SNF, Inc.'s revenues and workforce are ten times greater than Astoria's revenues and workforce;

- a recent BrandFX public statement that BrandFX is "the largest manufacturer of fiberglass truck bodies in the United States";

- a recent BrandFX public statement that BrandFX is "the world's largest composite utility body manufacturer";

- a recent BrandFX public statement that BrandFX "employs over 500 people in 5 states";

- a recent BrandFX public statement that BrandFX's manufacturing capacity includes "over a million square feet of capacity in five states";

- corroborating information in the public domain, including without limitation documents indicating that Defendant SNF, Inc. dramatically increased its relevant manufacturing capacity and other commercial capacities through acquisitions of the assets of Fiber Body Industries in 2002, the Oregon company GemTop Mfg. in 2003 and assets of the Minnesota company Glasstite in 2005, and that the BrandFX business also in recent years has dramatically expanded its manufacturing assets in ways other than through acquisitions;

- information in the public domain indicating that annual BrandFX revenues have grown with extraordinary rapidity in recent years, including a January 2012 market survey identifying Defendant SNF, Inc.'s annual revenues as $39.64 million and a September 2013 press release published by non-party private investor Stonebridge Partners identifying annual BrandFX revenues as then "approaching $80 million";

- additional public documents indicating that the "BrandFX Body Company" business has extraordinarily strong market power in the United States market for FUBs, *e.g.*, documents showing that public entities engaged in procurement of FUBs have imposed requirements specifically benefitting such business and indicating entrenched buyer preference for BrandFX products, *e.g.*, requirements limiting bidder eligibility to BrandFX dealers or distributors and requirements specifying that FUBs must be BrandFX FUBs; and

- additional industry information.

73.  Upon information and belief, the actual purpose and specific intent of Defendant SNF, Inc. in the conduct described herein was to suppress, foreclose and destroy existing and foreseeable lawful competition in the United States market for FUBs, including without limitation such competition by Industrial Models, to interfere directly with the business activities, prospective business activities, relationships and prospective relationships of Industrial Models, to monopolize the United States market for FUBs, and to maintain BrandFX monopoly power in the United States market for FUBs.

74.  Upon information and belief, the actual purpose and specific intent of the BrandFX Business Entities in the conduct described herein was to suppress, foreclose and destroy existing and foreseeable lawful competition in the United States market for FUBs, including without limitation such competition by Industrial Models, to interfere directly with the business activities, prospective business activities, relationships and prospective relationships of Industrial Models, to monopolize the United States market for FUBs, and to maintain BrandFX monopoly power in the United States market for FUBs.

75.  Upon information and belief, although Defendant SNF, Inc. endeavored to give its filing and prosecution of the Texas lawsuit against Industrial Models the appearance of some intent to serve a lawful purpose, neither Defendant SNF, Inc. nor any other of the BrandFX Business Entities actually had such intent, and the Texas lawsuit was objectively meritless such that it lacked any potential lawful purpose; such Texas lawsuit and the BrandFX Business Entities' related conduct amounted to a mere sham to cover the BrandFX Business Entities' predatory purpose and intent.

76. Given the market power of the BrandFX Business Entities, the conduct described in the foregoing paragraphs carries a dangerous probability of resulting in monopolization of the

-20-

United States market for FUBs, has in fact resulted in such monopolization, and has in fact

resulted in acquisition and maintenance of such monopoly power.

## COUNT I - VIOLATION OF SHERMAN ACT §1

77. Paragraphs 1-76 are realleged and incorporated by reference as if fully set forth

herein.

78. Prior to Defendant SNF, Inc.'s Texas lawsuit against Industrial Models, Defendant

SNF, Inc. made a specific offer to Industrial Models to enter an agreement restraining interstate

trade and commerce in the market for FUBs.  Such offer included the following terms:

- Industrial Models refrains from selling the Subject Molds or using the Subject

  Molds to manufacture FUBs; and

- Defendant SNF, Inc. refrains from suing Industrial Models for infringement of

  non-existent intellectual property rights, which Defendant SNF, Inc. knew did not

  exist.

79. Industrial Models refused such invitation to collude, and Defendant SNF, Inc. filed

its bad-faith Texas lawsuit against Industrial Models.

80. During the pendency of Defendant SNF, Inc.'s Texas lawsuit against Industrial

Models, Defendant SNF, Inc. made a further specific offer to Industrial Models to enter an

agreement restraining interstate trade and commerce in the market for FUBs.  Such offer

included the following terms:

- Industrial Models makes a covenant not to compete against the BrandFX business;

- Industrial Models relinquishes valuable manufacturing assets, including at least

  the Subject Molds, to BrandFX;

- Industrial Models issues a general release to Defendant SNF, Inc. from any liability to Industrial Models; and

- Defendant SNF, Inc. makes a payment of money to Industrial Models.

81.   Industrial Models refused such further invitation to collude, and Defendant SNF, Inc. continued to prosecute its bad-faith Texas lawsuit against Industrial Models.

82.   Upon information and belief, Defendant SNF, Inc. also pressured at least one other entity (*i.e.*, an entity other than Industrial Models) active in the United States market for FUBs, including at least Badger Truck, to enter into an agreement restraining interstate trade and commerce in the market for FUBs.  Upon information and belief, such offer or offers included the following terms, which Defendant SNF, Inc. offered in the knowledge that it had no actual right to exclude any other from using the Subject Molds or using any product manufactured therewith:

- offeree refrains from making commercial use of the Subject Molds or trading in FUBs manufactured therewith; and

- Defendant SNF, Inc. refrains from suing offeree for infringement of (non-existent) intellectual property rights.

83.   Upon information and belief, Defendant SNF, Inc. and at least one other of the BrandFX Business Entities made a shared decision not to retract the infringement allegations earlier made by Defendant SNF against Industrial Models with respect to non-existent BrandFX trade dress rights, patent rights and copyrights, despite the BrandFX Business Entities' knowledge that no relevant rights existed.

84.  By omitting to retract such allegations against Industrial Models despite knowing they were baseless, the BrandFX Business Entities sought to benefit, including without limitation from continued implicit assertion of such allegations.

85.  At least by the conduct alleged herein, the BrandFX Business Entities unlawfully restrained competition in the United States market for FUBs, for example by causing stoppage and reduction in output by one or more competitors of the BrandFX business, including at least Industrial Models, by substantially excluding Industrial Models from the United States market for FUBs, and by imposing crippling costs on Industrial Models at a time when it was a new market entrant.

86.  But for the BrandFX Business Entities' conduct, including at least as alleged herein, the United States market for FUBs would presently be and in recent years would have been characterized by greater product choice, greater price competition, greater competition with respect to quality, greater competition with respect to design and, upon information and belief, lower prices than presently exist and than have existed.  Such conditions would have redounded to the specific benefit of the consuming public, the specific benefit of Industrial Models as a competitor in the United States market for FUBs, and the specific benefit of other competitors in such market.

87.  The BrandFX Business Entities have acted in violation of Section 1 of the Sherman Act (15 U.S.C. §1), including at least by the BrandFX Business Entities' conduct as alleged herein.

88. As a direct result of the BrandFX Business Entities' conduct, including at least as alleged herein, Industrial Models has been injured in its business and property and has suffered related damages, and Industrial Models continues to suffer such injury and related damages.

89. Under Section 4 of the Clayton Act (15 U.S.C. §15) Industrial Models is entitled to recover threefold the damages sustained in connection with the BrandFX Business Entities' violation of 15 U.S.C. §1 and also to recover the cost of this suit including reasonable attorneys' fees.

## COUNT II - VIOLATION OF SHERMAN ACT §2 BY SNF, INC.

90. Paragraphs 1-89 are realleged and incorporated by reference as if fully set forth herein.

91. Defendant SNF, Inc. has acted in violation of Section 2 of the Sherman Act (15 U.S.C. §2), including at least by Defendant SNF, Inc.'s conduct as alleged herein, including particularly by monopolization and/or attempted monopolization of the product market for fiberglass utility bodies in the geographic market of the United States.

92. Defendant SNF, Inc.'s conduct as alleged herein constitutes *per se* violation of Section 2 of the Sherman Act (15 U.S.C. §2).

93. As a direct result of Defendant SNF, Inc.'s conduct, including at least as alleged herein, Industrial Models has been injured in its business and property and has suffered related damages, and Industrial Models continues to suffer such injury and related damages.

94. Under Section 4 of the Clayton Act (15 U.S.C. §15) Industrial Models is entitled to recover threefold the damages sustained in connection with Defendant SNF, Inc.'s violation of 15 U.S.C. §2 and also to recovery the cost of this suit including reasonable attorneys' fees.

## COUNT III - VIOLATION OF SHERMAN ACT §2
## BY THE BRANDFX BUSINESS ENTITIES

95. Paragraphs 1-94 are realleged and incorporated by reference as if fully set forth herein.

96. BrandFX Body Company, the business operated by the BrandFX Business Entities, has acted in violation of Section 2 of the Sherman Act (15 U.S.C. §2), including at least by their conduct alleged herein.

97. The BrandFX Business Entities' conduct as alleged herein constitutes *per se* violation of Section 2 of the Sherman Act (15 U.S.C. §2).

98. As a direct result of the BrandFX Business Entities' conduct, including at least as alleged herein, Industrial Models has been injured in its business and property and has suffered related damages, and Industrial Models continues to suffer such injury and related damages.

99. Under Section 4 of the Clayton Act (15 U.S.C. §15) Industrial Models is entitled to recover threefold the damages sustained in connection with the BrandFX Business Entities' violation of 15 U.S.C. §2 and also to recover the cost of this suit including reasonable attorneys' fees.

## COUNT IV - DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF PURPORTED BRANDFX TRADE DRESS RIGHTS

100. Paragraphs 1-99 are realleged and incorporated by reference as if fully set forth herein.

101. Industrial Models has not infringed any trade dress right owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

102. No reasonably-foreseeable use by Industrial Models of the Subject Molds will infringe any trade dress right owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

103. No use or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any trade dress right owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

104. An actual case or controversy exists between the BrandFX Business Entities and Industrial Models, given the following:  In connection with the Subject Molds and products to be made therewith, Defendant SNF, Inc. has accused Industrial Models of infringing BrandFX trade dress rights.  Defendant SNF, Inc. has threatened to file a lawsuit against Industrial Models for trade dress infringement, and in fact did file such a lawsuit in Texas, such lawsuit currently having been dismissed without prejudice on procedural grounds.  The BrandFX Business Entities have not withdrawn the accusation of trade dress infringement, including despite Industrial Models requests for such withdrawal.

105. Industrial Models has been injured and damaged by the BrandFX Business Entities' conduct as alleged herein.

106. Declaratory relief is both appropriate and necessary to establish that Industrial Models has not infringed any trade dress right owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

## COUNT V - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF PURPORTED BRANDFX PATENT RIGHTS

107. Paragraphs 1-106 are realleged and incorporated by reference as if fully set forth herein.

108. Industrial Models has not infringed any United States patent owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

109. No reasonably-foreseeable use by Industrial Models of the Subject Molds will infringe any United States patent owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

110. No use or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any United States patent owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

111. An actual case or controversy exists between the BrandFX Business Entities and Industrial Models, given the following: In connection with the Subject Molds and products to be made therewith, Defendant SNF, Inc. has accused Industrial Models of infringing BrandFX patent rights. Defendant SNF, Inc. has threatened to file a lawsuit against Industrial Models for patent infringement. Despite having never specified any particular patent in connection with its infringement accusations against Industrial Models, the BrandFX Business Entities have not withdrawn the accusation of patent infringement, including despite Industrial Models requests for such withdrawal.

112. Industrial Models has been injured and damaged by the BrandFX Business Entities' conduct as alleged herein.

113. Declaratory relief is both appropriate and necessary to establish that Industrial Models has not infringed any patent owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

## COUNT VI - DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF PURPORTED BRANDFX COPYRIGHTS

114. Paragraphs 1-113 are realleged and incorporated by reference as if fully set forth herein.

115. Industrial Models has not infringed any copyright owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

116. No reasonably-foreseeable use by Industrial Models of the Subject Molds will infringe any copyright owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

117. No use or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any copyright owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

118. An actual case or controversy exists between the BrandFX Business Entities and Industrial Models, given the following:  In connection with the Subject Molds and products to be made therewith, Defendant SNF, Inc. accused Industrial Models of infringing BrandFX copyrights.  Defendant SNF, Inc. has threatened to file a lawsuit against Industrial Models for copyright infringement.  Despite having never specifying any particular copyright in connection with its infringement accusations against Industrial Models, the BrandFX Business Entities have not withdrawn the accusation of copyright infringement, including despite Industrial Models requests for such withdrawal.

119. Industrial Models has been injured and damaged by the BrandFX Business Entities' conduct as alleged herein.

120.   Declaratory relief is both appropriate and necessary to establish that Industrial Models has not infringed any copyright owned by Defendant SNF, Inc. or any other of the BrandFX Business Entities.

**COUNT VII - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

121.   Paragraphs 1-120 are realleged and incorporated by reference as if fully set forth herein.

122.   The BrandFX Business Entities tortiously interfered with Industrial Models' prospective economic advantage, including at least by the conduct as alleged herein and in particular by interfering with a potential relationship with Badger Truck and with one or more persons capable of facilitating growth and success of Industrial Models' business in the market for fiberglass utility bodies for trucks.

123.   As a direct result of BrandFX Business Entities' tortious interference, including at least as alleged herein, Industrial Models has been injured and suffered related damages, and Industrial Models continues to suffer such injury and related damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Industrial Models, prays that this Court enter judgment in its favor and against the BrandFX Business Entities as follows:

A.   An entry of judgment in favor of Industrial Models and against the BrandFX Business Entities that the BrandFX Business Entities have violated 15 U.S.C. §1;

B.   An entry of judgment in favor of Industrial Models and against the BrandFX Business Entities that the BrandFX Business Entities have violated 15 U.S.C. §2;

-29-

C. An award of damages to Industrial Models in an amount including threefold the damages sustained by Industrial Models in connection with the BrandFX Business Entities' violation of 15 U.S.C. §1 and recovery of the cost of this suit including reasonable attorneys' fees;

D. An award of damages to Industrial Models in an amount including threefold the damages sustained by Industrial Models in connection with Defendant SNF, Inc.'s violation of 15 U.S.C. §2 and recovery of the cost of this suit including reasonable attorneys' fees;

E. Declaratory judgment that Industrial Models has not infringed any SNF, Inc. or BrandFX Business Entities trade dress right, that no sale or reasonably-foreseeable use by Industrial Models of the Subject Molds will infringe any such trade dress right, and that no use, manufacture or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any such trade dress right;

F. Declaratory judgment that Industrial Models has not infringed any United States patent owned by any of the BrandFX Business Entities, that no sale or reasonably-foreseeable use by Industrial Models of the Subject Molds will infringe any such patent, and that no use, manufacture or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any such patent;

G. Declaratory judgment that Industrial Models has not infringed any copyright owned by any of the BrandFX Business Entities, that no reasonably-foreseeable use or sale by Industrial Models of the Subject Molds will infringe any such copyright, and that

no use, manufacture or sale by Industrial Models of any product reasonably expected to result from a manufacturing process using the Subject Molds will infringe any such copyright.

H. A permanent injunction enjoining the BrandFX Business Entities, their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees and attorneys from asserting or threatening to assert against Industrial Models, any Industrial Models customer, any potential customer of Industrial Models or any user of any Industrial Models product, any charge of trade dress infringement in connection with the Subject Molds, any product manufactured using the Subject Molds, or any product reasonably expected to result from a manufacturing process using the Subject Molds;

I. A permanent injunction enjoining the BrandFX Business Entities, their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees and attorneys from asserting or threatening to assert against Industrial Models, any Industrial Models customer, any potential customer of Industrial Models or any user of any Industrial Models product, any charge of patent infringement in connection with the Subject Molds, any product manufactured using the Subject Molds, or any product reasonably expected to result from a manufacturing process using the Subject Molds;

J. A permanent injunction enjoining the BrandFX Business Entities, their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees and attorneys from asserting or threatening to assert against Industrial Models, any Industrial Models customer, any potential customer of Industrial Models or any user

of any Industrial Models product, any charge of copyright infringement in connection with the Subject Molds, any product manufactured using the Subject Molds, or any product reasonably expected to result from a manufacturing process using the Subject Molds;

K. To the extent appropriate, a finding that this case is exceptional within the meaning of 15 U.S.C. §1117(a) for reason of the BrandFX Business Entities' conduct, and a related order that the BrandFX Business Entities pay Industrial Models its reasonable attorneys' fees and costs;

L. To the extent appropriate, a finding that this case is exceptional within the meaning of 35 U.S.C. §285 for reason of the BrandFX Business Entities' conduct, and a related order that the BrandFX Business Entities pay Industrial Models its reasonable attorneys' fees and costs;

M. To the extent appropriate, a finding that this case is exceptional within the meaning of 17 U.S.C. §505 for reason of the BrandFX Business Entities' conduct, and a related order that the BrandFX Business Entities pay Industrial Models its full costs including its reasonable attorneys' fees;

N. An entry of judgment in favor of Industrial Models and against the BrandFX Business Entities that the BrandFX Business Entities have tortiously interfered with Industrial Models' prospective economic advantage;

O. An award of damages adequate to compensate Industrial Models for the BrandFX Business Entities' tortious interference with Industrial Models' prospective economic advantage;

-32-

P.  Such other and further relief as this Court or a jury may deem just and proper.

**Jury Demand**

Industrial Models requests a trial by jury.

Dated this 8th day of July, 2015

Respectfully submitted,

INDUSTRIAL MODELS, INC.

By   /s/ Thomas F. Harkins, Jr.
     Thomas F. Harkins, Jr.
     Texas Bar No. 09000990

Whitaker Chalk Swindle & Schwartz PLLC
301 Commerce St., Suite 3500
Fort Worth, TX  76102
Tel.:  (817) 878-0500
Fax:  (817) 878-0501
tharkins@whitakerchalk.com

ATTORNEY FOR PLAINTIFF

Of counsel:

Peter N. Jansson (*pro hac vice* to be applied for)
Eric V.C. Jansson (*pro hac vice* to be applied for)
Jansson Munger McKinley & Shape Ltd.
601 Lake Avenue
Racine, WI  53403
Tel.:  (262) 632-6900
Fax:  (262) 632-2257
pjansson@janlaw.com
ejansson@janlaw.com

-33-