U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

AUG 2 9 2016

CLERK, U.S. DISTRICT COURT

By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| INDUSTRIAL MODELS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:15-CV-689-A |
| | § | |
| SNF, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of plaintiff,
Industrial Models, Inc., for summary judgment. The court, having
considered the motion, the response of defendants, SNF, Inc.
("SNF"), BrandFX Holdings, LLC ("Holdings"), and BrandFX, LLC
d/b/a BrandFX ("BrandFX"), the reply, the record, the summary
judgment evidence, and applicable authorities, finds that the
motion should be granted.

### I.

### Background

On July 8, 2015, plaintiff filed its original complaint in
this action, urging a number of causes of action. By memorandum
opinion and order signed September 23, 2015, the court granted in
part defendants' motion to dismiss. The only claims remaining are
those asserted under Counts IV, V, and VI, seeking declarations
of non-infringement of purported trade dress, patent, and
copyright rights.

II.

## Grounds of the Motion

Plaintiff urges three grounds in support of its motion: (1) plaintiff has not infringed any trade dress, patent or copyright of any defendant; (2) no sale or reasonably-foreseeable use of the molds plaintiff acquired from Badger Truck will infringe any trade dress right, patent, or copyright of any defendant; and (3) no use, manufacture or sale by plaintiff of any product reasonably expected to result from a manufacturing process using the subject molds will infringe any trade dress right, patent or copyright of any defendant.

III.

## Applicable Legal Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the

2

nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits,
> interrogatories, admissions, and depositions could not,
> as a whole, lead a rational trier of fact to find for
> the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of

law.[1] <u>Celotex Corp.</u>, 477 U.S. at 323.  If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. &</u> <u>Advocacy Sys.</u>, 929 F.2d at 1058.

                                IV.

                          <u>Undisputed Facts</u>

     The summary judgment evidence establishes the following undisputed facts:

     Plaintiff purchased from Badger Truck six molds (the "subject molds") for the manufacture of fiberglass utility bodies ("FUBs"), which would be attached to a pick-up truck frame. There were two molds, one for the driver-side and one for the passenger-side, for each of three sizes-8, 9, and 11 foot FUBs. Plaintiff hired personnel and purchased equipment in addition to the molds to prepare to enter the FUB market.

     Pick-up trucks are converted into utility vehicles by attaching a utility body, such as a FUB, to the truck frame immediately behind the cab. FUBs contain compartments for carrying tools, supplies and materials. Plaintiff's FUBs would have had a box-like compartment on either side (made from the

_____

     [1]In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

subject molds)—essentially mirror images--attached to a horizontal truck-bed surface between them. The compartments would have been parallel to each other such that the width of the vehicle would not vary. And each compartment would be constant in length and height having straight linear upper and lower edges. Plaintiff's FUBs would not have been contoured like those manufactured by SNF and BrandFX. Plaintiff's FUBs would have had an integrated drip rail formed during the molding process and bulkier and stronger attachment points formed by the molding process, distinguishing them from other FUBs.

Other manufacturers of utility bodies include Sauber Manufacturing Co., which has manufactured and sold utility bodies for decades. Since at least the late 1990s, Sauber has manufactured a utility body with a removable wheel panel having a radius of curvature at its two top corners of 1 1/2 inches. Other manufacturers have used doors with curved corners that are recessed.

Lee Finley is the vice president of SNF, former chairman of the board of directors and chief executive officer and current board member of BrandFX, and shareholder of Holdings. Prior to August 30, 2013, SNF manufactured FUBs, including its LS product line, and conducted business under the assumed name "Brand FX Body Company" ("FX"). Effective August 30, 2013, SNF sold the

assets and business related to FX to Holdings and assigned all of the intellectual property rights associated with its LS product line to BrandFX.

In early 2013, Finley learned (from an unidentified source at a time and place unknown) that Badger Truck has shipped an LS FUB to a person in Alabama for the purpose of "splashing" it and creating molds from which replicas could be made. He further learned (again from an unidentified source at a time and place unknown) that Badger Truck had sold the molds to plaintiff, which was trying to sell them.[2] On February 19, 2013, Finley sent written notice to plaintiff alleging that the molds infringed on "our trade dress, our copyrights and our patents" and demanding that plaintiff get the molds off the market.

On March 18, 2013, SNF filed a lawsuit against plaintiff in the 236th Judicial District Court of Tarrant County, Texas, alleging that it had developed a unique trade dress associated with its truck bodies and that plaintiff was attempting to sell a set of product molds that would enable a person to unlawfully infringe upon its unique trade dress. SNF asserted claims for trade dress infringement and common law unfair competition and sought to permanently enjoin plaintiff from offering to sell,

_____

[2]As plaintiff points out, there is no proper summary judgment evidence to establish that these allegations are actually true.

selling, using, or otherwise disposing of the molds. SNF never
identified anything that could qualify as trade dress in its
state court filings. The court rendered a final default judgment,
which was set aside on appeal. SNF nonsuited the state court
action in August 2014.

V.

Analysis

In light of the position taken by defendants and the court's
ruling on their motion to dismiss, plaintiff is clearly entitled
to judgment as to its remaining claims against defendants SNF and
Holdings. Both maintain that they own no rights that could be
enforced against plaintiff and there is no genuine dispute on
that point. That defendants collectively have threatened to sue
plaintiff[3] for violation of patent, copyright, and trade dress is
established despite their arguments to the contrary.

Plaintiff has shown that it has taken substantive steps to
engage in the manufacture of FUBs using the molds acquired from
Badger Truck, but has not done so because of defendants' threats
to pursue legal action. Despite plaintiff's gratuitous statement
that it has considered significant improvements to the design,
plaintiff has shown that the planned product does have a fixed

---

[3]In fact, as noted, SNF sued plaintiff in state court in Texas and continued to assert its claims
long after it transferred its intellectual property rights to BrandFX.

7

and definite design and there is no genuine issue to the
contrary. Thus, the burden is on defendants to show just where,
how, and why plaintiff's FUBs would infringe the FX trade dress.
See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct.
843, 849-50 (2014).

Trade dress refers to the design or packaging of a product
that serves to identify the product's source. TrafFix Devices,
Inc., v. Marketing Displays, Inc., 532 U.S. 23, 28 (2001). Trade
dress is a concept that refers to the image and overall
appearance of a product. Allied Mktg. Grp., Inc. v. CDL Mktg.,
Inc., 878 F.2d 806, 812 (5th Cir. 1989). For trade dress to be
protectable, the party claiming it must show that the product's
configuration has acquired a secondary meaning. Wal-Mart Stores,
Inc. v. Samara Bros., Inc., 529 U.S. 205, 216 (2000). That burden
is met by showing that through long and exclusive use, the
alleged trade dress has become associated with the goods as a
source-identifier in the minds of the purchasing public.
Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 871 (8th Cir.
1994); Berg v. Symons, 393 F. Supp. 2d 525, 550 (S.D. Tex. 2005).
And, another aspect of trade dress protection is that it may not
be claimed for product features that are functional. TrafFix
Devices, 532 U.S. at 29.

Here, the summary judgment evidence establishes that defendants have not, in the earlier lawsuit or in written discovery, identified anything more than the "overall shape, profile and appearance" of the FX FUBs as being the trade dress. Through his deposition, Finley identified certain features alleged to be protected. Plaintiff has shown, however, that the features have been widely used by others and that at least one of them is functional. And, plaintiff's product would not have a front to back contour. Defendants have not met their burden of showing infringement as to trade dress. Besides failing to identify the claimed trade dress, defendants have failed to show that it has acquired a secondary meaning.

Defendants have not made any attempt to establish a patent or copyright that plaintiff has infringed or could infringe.

## VI.

### Order

The court ORDERS that plaintiff's motion for summary judgment be, and is hereby granted, and the court ORDERS and DECLARES that:

(1) plaintiff has not infringed any trade dress right, patent or copyright of any of the defendants;

(2) no sale or reasonably-foreseeable use of the molds plaintiff acquired from Badger Truck will infringe any trade dress right, patent or copyright of any defendant; and

(3) no use, manufacture, or sale by plaintiff of any product reasonably expected to result from a manufacturing process using the subject molds will infringe any trade dress right, patent or copyright of any defendant.

SIGNED August 29, 2016.

_____
JOHN McBRYDE
United States District Judge

10